UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANGELIQUE S. o/b/o A.M.A.C.,
a minor child,

       Plaintiff,

v.                5:20-CV-0331
                 (GTS)

ANDREW M. SAUL, Commissioner of the
Social Security Administration,

       Defendant.
_____

APPEARANCES:            OF COUNSEL:

OLINSKY LAW GROUP         HOWARD D. OLINSKY, ESQ.
 Counsel for Plaintiff
250 South Clinton Street, Suite 210
Syracuse, NY 13202

SOCIAL SECURITY ADMINISTRATION    NATASHA OELTJEN, ESQ.
OFFICE OF GENERAL COUNSEL–REGION I  Special Assistant U.S. Attorney
 Counsel for Defendant
JFK Federal Building, Room 625
15 New Sudbury Street
Boston, MA 02203

GLENN T. SUDDABY, Chief United States District Judge

# DECISION and ORDER

   Currently before the Court, in this action filed by Angelique S. ("Plaintiff") on behalf of her minor child, A.M.A.C. ("Claimant") against the Commissioner of Social Security Andrew Saul ("Defendant") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are (1) Plaintiff's motion for judgment on the pleadings, and (2) Defendant's motion for judgment on the pleadings. (Dkt. Nos. 14, 15.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied, and Defendant's motion for judgment on the pleadings is granted.

**I.  RELEVANT BACKGROUND**

**A. Factual Background**

Claimant was born in 2005, making her 11 years old at her application filing date and 13 years old at the date of the ALJ's decision. At the time of the hearing, Claimant testified that she was in eighth grade. (T. 44.)[2] In her application, Plaintiff alleged that Claimant is disabled due to anxiety with panic attacks, depression with suicidal thoughts, a learning disability in reading and math, bipolar moods, anorexia, scoliosis, and spinal stenosis. (T. 74.)

**B. Procedural History**

Plaintiff applied for Supplemental Security Income childhood benefits on behalf of Claimant on November 8, 2016. (T. 15.) This application was initially denied on February 1, 2017, after which Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.*) Plaintiff and Claimant appeared at a hearing before ALJ Jude B. Mulvey on December 11, 2018. (T. 15, 39.) On December 24, 2018, the ALJ issued a written decision finding Claimant was not disabled under the Social Security Act. (T. 15-34.) On January 24, 2020, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (T. 1-3.)

**C. The ALJ's Decision**

Generally, in his decision, the ALJ made the following four findings of fact and conclusions of law. (T. 15-24.) First, the ALJ found that Claimant has not engaged in substantial gainful activity. (T. 18.) Second, the ALJ found that Claimant's anxiety, depression, and self-harm behaviors are severe impairments, while her scoliosis is not a severe impairment. (T. 18-19.) Third, the ALJ found that Claimant's severe impairments do not meet or medically

---

[2] The Administrative Transcript is found at Dkt. No. 13. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"); specifically, the ALJ considered Listings 112.04 for mood disorders and 112.06 for anxiety disorders. (T. 19.) Fourth, the ALJ found that Claimant's impairments do not functionally equal a listed impairment and she has the following limitations in the relevant areas of functioning: (a) a marked limitation in acquiring and using information; (b) a less than marked limitation in attending and completing tasks; (c) a less than marked limitation in interacting and relating with others; (d) no limitation in moving about and manipulating objects; (e) no limitation in self-care; and (f) no limitation in health and well-being. (T. 28-34.) The ALJ therefore concluded that Claimant was not disabled.

### D. The Parties' Briefing on Their Motions

#### 1. Plaintiff's Motion for Judgment on the Pleadings

Generally, in her motion, Plaintiff argues that the ALJ failed to reconcile his functional equivalence finding with the great weight he afforded to the opinion from Claimant's eighth grade teacher. (Dkt. No. 14, at 13-19 [Pl.'s Mem. of Law].) More specifically, Plaintiff argues that the ALJ purported to afford that opinion great weight, but he rejected portions of that opinion that suggest greater limitations without any explanation for such rejection. (*Id.*)

#### 2. Defendant's Motion for Judgment on the Pleadings

Generally, in his motion, Defendant argues that the ALJ's findings are supported by substantial evidence and the ALJ properly explained the basis of his functional equivalence finding. (Dkt. No. 15, at 7-19 [Def.'s Mem. of Law].) More specifically, Defendant argues that (a) the functional equivalence finding was explicitly based on more than just the teacher's opinion, including the medical records, school records showing that attendance was impacting Claimant's grades, reports that Claimant did better in school when she was no longer being

bullied, the fact that Claimant was not medicated for her attention deficit hyperactivity disorder ("ADHD"), and other medical assessments and opinion evidence, and (b) the teacher's opinion does not itself compel a different result because the teacher did not assess serious or very serious limitations broadly for the area of attending and completing tasks, but rather found that Claimant had moderate-to-no limitations in many of the relevant subcategories in this area. (*Id.*)

## II. APPLICABLE LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

B.     **Standard to Determine Disability**

An individual under the age of 18 is disabled, and thus eligible for Social Security Income benefits, if he or she has a medically determinable physical or mental impairment, which results in "marked" and "severe" functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(C)(i). However, that definitional provision excludes from coverage any "individual under the age of 18 who engages in substantial gainful activity." 42 U.S.C. § 1382c(a)(3)(C)(ii).

By regulation, the agency has prescribed a three-step evaluative process to determine whether a child can meet the statutory definition of disability. 20 C.F.R. § 416.924; *Kittles v. Barnhart*, 245 F. Supp. 2d 479, 487-88 (E.D.N.Y. 2003); *Ramos v. Barnhart*, 02-CV-3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003). The first step of the test, which bears some

similarity to the five-step analysis employed in adult disability cases, requires determining whether the child has engaged in substantial gainful activity. 20 C.F.R. § 416.924; *Kittles*, 245 F. Supp. 2d at 488. If so, then the child is ineligible for Social Security Income benefits. 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b).

If the child has not engaged in substantial gainful activity, the second step of the test requires examining whether the child suffers from one or more medically determinable impairments that, either singly or in combination, are properly regarded as "severe" because they cause more than minimal functional limitation. 20 C.F.R. § 416.924(c); *Kittles*, 245 F. Supp. 2d at 488. In essence, a child is disabled under the Social Security Act "if his impairment is as severe as one that would prevent an adult from working." *Sullivan v. Zebley*, 493 U.S. 521, 529 (1990).

If a "severe" impairment exists, the third step requires determining whether the child's impairment(s) meet or equal the severity of a presumptively disabling condition identified in the listings set forth under 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. § 416.924(d); *Zebley*, 493 U.S. at 526. Equivalence to a Listing can be either medical or functional. 20 C.F.R. § 416.924(d); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7. If an impairment is found to meet, or qualify as medically or functionally equivalent to, a Listing and the 12-month durational requirement is satisfied, the claimant will be deemed disabled. 20 C.F.R. § 416.924(d)(1); *Ramos*, 2003 WL 21032012, at *8.

Analysis of functionality considers how a claimant functions in six main areas referred to as "domains." 20 C.F.R. § 416.926a(b)(1); *Ramos*, 2003 WL 21032012, at *8. The domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). Those domains include the following: (i) acquiring and using

information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for oneself; and (vi) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). Functional equivalence is established if the child is determined to have an "extreme," or "more than marked," limitation in a single domain. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. An extreme limitation is an impairment that "interferes very seriously with [a claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i).

Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. A marked limitation exists when the impairment "interferes seriously with [a claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). A marked limitation "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 112.00(C).

## III. ANALYSIS

After carefully considering whether the ALJ's decision is supported by substantial evidence and consistent with applicable legal standards, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 15 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

Specifically, the Court finds that the ALJ sufficiently explained the basis for his decision, most relevantly as to Claimant's functioning in the domain of attending and completing tasks. The ALJ found that Claimant had a less than marked limitation in this domain, specifically

noting the documentation of absences or visits to the nurse's office during class, the amount of assignments she missed, failed, or did not hand in to her teachers, and the opinion of Claimant's eighth grade teacher. (T. 29-30.) The ALJ overall afforded great weight to the opinion from this teacher because of her ability to observe Claimant's performance on a frequent and consistent basis and her qualifications as an educator. (T. 27.)

Claimant's teacher opined, in relevant part, that Claimant had the following limitations in the domain of attending and completing tasks: (a) very serious problems with organizing her things or school materials and working at a reasonable pace and/or finishing on time; (b) serious problems with focusing long enough to finish an assigned activity or task, carrying out multi-step instructions, completing class or homework assignments, and completing work accurately without careless mistakes; (c) slight problems with refocusing when necessary and working without distracting herself or others; and (d) no problems with paying attention when spoken to, sustaining attention during play or sports activity, carrying out single-step instructions, waiting to take turns, and changing from one activity to another without being disruptive. (T. 262.) Her teacher elaborated that Claimant is often late with assignments, but stays after school daily to provide her a structured environment to complete her tasks; organization is one of Claimant's greatest deficiencies and she struggles with anything that involves specific structures, formats, or steps. (T. 263.)

Plaintiff argues that the serious and very serious problems in functioning opined by Claimant's teacher logically equate to marked and extreme limitations, respectively, relying on the fact that the regulations define an extreme limitation as one that interferes very seriously with a claimant's abilities and a marked limitation as one that interferes seriously with a claimant's abilities. (Dkt. No. 14, at 15-16 [Pl.'s Mem. of Law]); 20 C.F.R. § 416.926a(e). This

8

Court has previously issued mixed rulings on this issue. *Compare Christina B. v. Comm'r of Soc. Sec.*, 19-CV-1192, 2020 WL 5848732, at *8 (N.D.N.Y. Oct. 1, 2020) (Baxter, M.J.) (finding that these limitations do not necessarily equate to marked and extreme limitations) *with Bishop o/b/o K.M.B. v. Comm'r of Soc. Sec.*, 16-CV-1190, 2017 WL 4512163, at *6 (N.D.N.Y. Oct. 10, 2017) (Suddaby, C.J.) (noting that the wording of the regulatory definition for extreme and marked limitations appeared to suggest that the terms very serious/extreme and serious/marked are equivalent).

However, even accepting Plaintiff's argument, it is not clear-cut that the teacher's opinion supports a marked limitation in the overall domain of attending and completing tasks. As discussed above, this teacher opined very serious problems in two of the subareas, serious problems in four of the subareas, and slight or no problems in seven of the subareas. This teacher thus opined slight or no problems in Claimant's abilities related to more than half of the listed subareas for this domain. Although Plaintiff might interpret this as indicating an overall marked limitation in the domain, the Court cannot say that the ALJ's interpretation of this as an overall less-than-marked limitation was unreasonable under the circumstances. Indeed, it is not this Court's role to reassess the findings made by the ALJ based on its own interpretation of the evidence, but rather to determine whether the ALJ's findings are supported by substantial evidence. *See Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (noting that, "the court may not substitute its own judgment for that of the Secretary, even if it might justifiably have reached a different result upon a *de novo* review"); *Bush v. Comm'r of Soc. Sec.*, 16-CV-1007, 2017 WL 4621096, at *8 (N.D.N.Y. Oct. 13, 2017) (Suddaby, C.J.) ("[W]here the evidence is subject to more than one reasonable interpretation, this Court is bound to uphold the ALJ's interpretation.") (collecting cases); *Eddie Alberto Lugo Cortes v. Comm'r of Soc. Sec.*, 16-CV-1012, 2017 WL

3524674, at *8 (N.D.N.Y. Aug. 15, 2017) (Hummel, M.J.) (finding that the ALJ's interpretation of the consultative examiner's opinion was not unreasonable in light of all of the evidence). Because it appears that the ALJ reasonably interpreted the teacher's opinion as indicating a less-than-marked overall limitation in the domain of attending and completing tasks, there was nothing for the ALJ to explain or reconcile, contrary to Plaintiff's argument.

Additionally, the ALJ's somewhat cursory discussion related to his findings on the teacher's opinion specifically as to the domain of attending and completing tasks does not frustrate review here, because Defendant is correct that the teacher's opinion was not the only opinion evidence relied on by the ALJ in making his determination. The ALJ also afforded partial weight to the opinion of therapist Emily Darbey, LMSW and partial weight to the opinions from the non-examining state agency medical consultants. (T. 25-26.) Notably, the ALJ rejected only the portion of Ms. Darbey's opinion related to a marked limitation in a separate domain and related to the domain of interacting and relating with others, but otherwise appears to have credited her opinions related to the domain of attending and completing tasks. (T. 26.) In the domain of attending and completing tasks, Ms. Darbey opined that Claimant had only moderate losses in her abilities to change activities or routine without distracting herself or others, sustain attention well enough to participate in group sports, read alone or complete chores, and complete a transition task without extra reminders or supervision, as well as no or mild losses in her abilities to focus attention in a variety of situations in order to follow directions, complete school assignments, remember and organize school-related material, and concentrate on details and avoid careless mistakes. (T. 486.)

The ALJ additionally cited in detail other evidence from the record that supports his determination in the domain of attending and completing tasks. Most notably, the ALJ noted

Claimant's extensive absences from school. (T. 236.) Claimant's 504 accommodation plan from the 2018-2019 school year indicates that she "is on task and works hard when she is in school," but "[a]ttendance has been a significant concern this year and teachers believe her absences are impacting her grades." (T. 227-28.) A progress report dated January 2, 2018, indicates that multiple teachers noted that absences were having a negative impact on her work completion and grades; this report indicated she had eight absences in the first reporting period and six in the second. (T. 239-40.) A subsequent progress report from June 6, 2018, indicated her absences increased to 12 in the remainder of the second reporting period, with three additional absences in the third reporting period and six in the fourth reporting period; it was again noted by multiple teachers that her grades had been negatively impacted by missing or late assignments and that attendance remained a problem. (T. 251-52.) The ALJ therefore explained in his decision that the evidence suggests that the reported extent of Claimant's limitations in attending and completing tasks (as reflected in her grades and school work completion rate) were not due solely to her impairments themselves, but rather also in part to large numbers of absences. This evidence therefore provides further support for the ALJ's finding related to this domain.

Additionally, the ALJ noted that, although it was reported that Claimant requires reminders to do chores, forgets to do her homework, needs assistance with organization, and cannot concentrate on a movie or television show, she is not on medication because the ones that she was on in the past made her feel sick and she is no longer in therapy because she did not want to go. (T. 20-25.) Medical records did not reveal extensive problems with attending and completing tasks; although she was noted to have ADHD with difficulty paying attention, impulsivity, and a tendency to not complete projects, it was also noted that treatment, including

cognitive behavioral therapy, helped to decrease her symptoms. (*See, e.g.*, T. 305, 312, 336, 400-01, 406-07.) In her discharge paperwork from behavioral health on October 11, 2018, it is noted that, as of September 7, 2017, her ADHD symptoms related to impulse control, focusing, and remaining still "have improved, and will not be treated at this time." (T. 536.) Overall, the ALJ provided sufficient explanation based on evidence from the record to support his finding that Claimant has a less-than-marked limitation in the domain of attending and completing tasks.

Additionally, the Court, having reviewed the record in its entirety, does not find that any other aspect of the ALJ's decision would require remand. Those findings are supported by substantial evidence and consistent with applicable law, and Plaintiff has not identified any reason why they should not be affirmed.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 14) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 15) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: June 24, 2021
Syracuse, New York

*[signature]*
Hon. Glenn T. Suddaby
Chief U.S. District Judge